UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

WINTHROP E. TAYLOR,

                    Plaintiff,                    No. CV-05-5044-FVS

        v.                                        ORDER

CITY OF PROSSER, et al.,

                    Defendants.

        **THIS MATTER** comes before the Court for consideration of a number of motions.  The plaintiff is represented by Michael J. Kelly and Tyler K. Firkins.  The defendants are represented by Michael E. McFarland, Jr.

        **BACKGROUND**

        The City of Prosser, Washington, hired Winthrop Taylor as its Chief of Police.  He began work on March 30, 2001.  His relationship with the City was governed by a written, five-year contract.  He reported to the Mayor.  After becoming Chief, Mr. Taylor began to suspect that municipal employees were behaving illegally.  He personally commenced three official "inquiries.[1]"  Linda Lusk became Mayor during November of 2003.  Early in 2004, Chief Taylor and three

_____

        [1]Mr. Taylor distinguishes between "inquiries" and "investigations."  Since the distinction is not material to the resolution of the pending motions, the two terms will be used interchangeably herein.

ORDER - 1

other persons met with a member of the Washington State Auditor's Office to discuss the loss or misappropriation of $1.4 million in municipal funds. During roughly the same period of time, the officers of the Prosser Police Department unanimously agreed that they lacked confidence in Chief Taylor's leadership. As a result, the City hired consultants to assess the situation. Chief Taylor thought that, by the Summer of 2004, the officers' concerns had been resolved. He seems to have been mistaken. The City asked one of the consultants to return during the Fall of 2004. There is a dispute with respect to whether Chief Taylor was willing to implement the consultant's recommendations. It is undisputed, however, that Mayor Lusk placed him on paid leave during October and fired him during December. At the time, his investigations regarding potentially illegal conduct were still in progress. His successor did not pursue them. Mr. Taylor filed an action asserting three claims. The first is that Mayor Lusk violated the First Amendment by firing him in retaliation for investigating misconduct by municipal employees. The second claim is that Mayor Lusk fired him in violation of public policy. The third claim is that Mayor Lusk breached his contract with the City by firing him. Mr. Taylor seeks both compensatory and punitive damages pursuant to 42 U.S.C. § 1983.[2] The Court has

---

[2] "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir.2005) (internal punctuation and citations omitted).

original jurisdiction over the first claim.  28 U.S.C. § 1331, 1343.

The Court may exercise supplemental jurisdiction over the second and

third claims.  28 U.S.C. § 1367.

**FIRST AMENDMENT CLAIM**

In order to establish a prima facie case of retaliatory

discharge, Mr. Taylor must demonstrate three things:  (1) he engaged

in protected speech; (2) Mayor Lusk took some adverse employment

action; and (3) his speech was a substantial or motivating factor for

the adverse employment action.  *Thomas v. City of Beaverton*, 379 F.3d

802, 807-08 (9th Cir.2004).  The threshold issue is whether Mr.

Taylor can satisfy the first requirement in light of *Garcetti v.*

*Ceballos*, --- U.S. ----, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

There, a deputy district attorney became concerned that a deputy

sheriff had misrepresented facts when applying for a search warrant.

126 S.Ct. at 1955.  After conducting an investigation of his own, the

deputy district attorney submitted a memo to his superiors urging

them to dismiss the case.  126 S.Ct. at 1955-56.  They refused to do

so.  Moreover, they allegedly retaliated against him for writing the

memo.  126 S.Ct. at 1956.  He filed suit.  Among other things, he

argued that his memo was protected by the First Amendment.  The

Supreme Court disagreed.  Of particular importance to the Court was

the fact that he "spoke as a prosecutor fulfilling a responsibility

to advise his supervisor about how best to proceed with a pending

case[.]"  *Id.* at 1960.  The Court held "that when public employees

make statements pursuant to their official duties, the employees are

not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.*

Mr. Taylor seems to concede that, with one exception, he acted and spoke pursuant to his official duties while conducting his inquiries. The one exception is this: Early in 2004, he and three other persons -- a City Councilman and two private citizens -- met with a representative of the state Auditor's Office. They provided information concerning the loss or misappropriation of $1.4 million in municipal funds.[3]  Mr. Taylor argues that he spoke as a private citizen during the course of the meeting.[4]  According to him, this assessment is supported by at least two circumstances. For one thing, the persons who accompanied him were not law enforcement officers. For another thing, the representative with whom they spoke was not part of Mr. Taylor's "chain of command."

It is true that private citizens were present at the meeting and that they shared information which they had obtained on their own. Although relevant, this is not dispositive. Mr. Taylor has stated repeatedly throughout this action that he was investigating potential violations of state criminal law. Criminal investigations are the

_____

[3]Mr. Taylor has not identified with precision any other acts or statements that allegedly are entitled to constitutional protection. *Cf. Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir.1999) (the First Amendment protects more than spoken words).

[4]Mr. Taylor has not described in detail what he said during the course of the meeting.

ORDER - 4

responsibility of law enforcement officers, who routinely work with private citizens while investigating suspicious activity.

It also is true that the state Auditor's representative was not Mr. Taylor's superior.  However, the record clearly implies that one of the principal purposes of the meeting was to secure the assistance of the state Auditor's Office.  This is something a law enforcement officer might be expected to do when investigating allegations of financial impropriety.  Certainly, there is no reason to think Mr. Taylor would have gone to the meeting had he not been the Chief of Police.

In effect, Mr. Taylor is asking the Court to "compartmentalize" the comments he made at the 2004 meeting; that is to say, consider them separately from the other comments he made during the course of his inquiries.  This request finds little support in *Garcetti*. There, the deputy district attorney's memo was not his only communication concerning the deputy sheriff's alleged misrepresentations.  His request for dismissal of the criminal case precipitated a heated meeting with members of the sheriff's department.  Later, he testified at a hearing concerning the validity of the search warrant.  The Supreme Court did not treat either his comments during the meeting or his testimony at the hearing as analytically distinct instances of speech.  Nor is there any reason to separate the statements Mr. Taylor made at the 2004 meeting from other statements he made during the course of his inquiries.  These had been underway for a number of months by the time he spoke with

ORDER - 5

the representative of the state Auditor's Office.  They continued for a number of months thereafter.  Mr. Taylor's comments at the meeting were incidental to his inquiries.

In sum, Mr. Taylor did not speak as a private citizen during the course of the 2004 meeting.  To the contrary, he spoke pursuant to his official duties.  His statements during the course of the meeting are not protected by the First Amendment.

Even if Mr. Taylor engaged in protected speech, he must show that it was a substantial motivating factor in Mayor Lusk's decision-making process.  *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir.2003).  Establishing causation is a significant obstacle in this case.  The record suggests that, by the time Mr. Taylor met with the representative of the state Auditor's Office, he had made a number of unprotected statements in furtherance of, and about, his inquiries.  The record also suggests that, after he met with the representative, he made additional unprotected statements in furtherance of, and about, his inquiries.  Mayor Lusk was entitled to rely upon Mr. Taylor's unprotected statements in evaluating his performance and determining whether he should be disciplined. *Garcetti*, --- U.S. at ----, 126 S.Ct. at 1962 ("We reject . . . the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties.").  Given the fact Mr. Taylor made many unprotected statements about his inquiries, it is difficult to see how he could establish that his protected statements, rather than his unprotected statements, were a

ORDER - 6

substantial motivating factor in Mayor Lusk's decision-making process.  However, since Mr. Taylor did not engage in protected speech, the Court need not resolve this issue.

**TORT AND CONTRACT CLAIMS**

Only Mr. Taylor's tort and contract claims remain.  The Court declines to exercise supplemental jurisdiction over them.  28 U.S.C. § 1367(c)(3).  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 619 n.7, 98 L.Ed.2d 720 (1988) ("'[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law-claims.'").

**IT IS HEREBY ORDERED:**

1. The defendants' motion for summary judgment (**Ct. Rec. 39**) is granted in part.  Mr. Taylor's federal claim is dismissed **with** prejudice.  His state claims are dismissed **without** prejudice.

2. The defendants' motion to have uncontroverted facts deemed admitted (**Ct. Rec. 106**) is denied.

3. The defendants' three motions to strike (**Ct. Recs. 108, 110, and 112**) are denied as moot.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to file this order, enter judgment accordingly, furnish copies to counsel, and close the case.

**DATED** this __30th__ day of August, 2006.

                    s/ Fred Van Sickle
                    Fred Van Sickle
                United States District Judge

ORDER - 7